Good morning, Your Honors. There are some advantages to having a second oral argument. I got to read the transcript and read the questions, particularly of Mr. Wallace, and I want to address the two, what I thought were very key questions that were asked. I'd like to start here with the jurisdiction of this court and address those two questions. And I have a board here to try to simplify this case. There are really three orders under review. Only one of those should be. Only the injunction order is a reviewable order. The order dealing with the appeal, which is on the middle section of my board, and I thought seriously about putting a double line between arbitration and injunction. After Greenlee, followed by Bushley, followed by Televisia, and Deese, and Sanford, the Ninth Circuit, adopting Greenlee and its guidance to the circuit courts, basically said what I have in white on black. A party cannot appeal a district court's order unless at the end of the day the parties are forced to settle their dispute other than by arbitration. We have... But the district court ordered you to arbitration, did it not? The bankruptcy court ordered us to arbitration. Yes. And there was nothing left with regard to the dispute over the DNO policy but to arbitrate its applicability. There was a great deal left at the bankruptcy court level. Involving Ace? Involving Ace. What was left? Whether or not there would be a bad faith claim, for example. Whether they breached the Barton Doctrine, the sanctions, there were a whole number of things left. And, Your Honor, if you take a look at the Deese case, if you'll remember, that's a malpractice case. The only thing that was left is, well, you could argue there was nothing left because all they had there was an administrative closing. Notwithstanding that, the Ninth Circuit said there is no appeal from an order of go to arbitration. What do they look at? They look at Section 16 of the Federal Arbitration Act. And they say, the court has ubiquitously said, since Greenlee, Section 16 of the Federal Arbitration Act has expressed the intent of Congress. And that intent is very simple. You can appeal an order denying arbitration, but you cannot appeal. I think your argument makes sense. The only issue you have, as far as I'm concerned, is whether or not there's intertwining. And Hendricks teaches us to look very carefully at that issue. I understand the Supreme Court has said don't find too much pen in jurisdiction. But we still are guided by the idea that there is some intertwining can be. And in both of these cases, they have to get back to the Barton issue. So why isn't that sufficient so that they could clean it up all at one time? That, I think, is the real issue you have to deal with. Well, let me try to address that head on. There is no, in my reading of the cases that I cited just a minute ago, any intertwining, embedded, or appellate pendent jurisdiction when there is an order granting arbitration. It's that simple. And the cases deal with all three of those phrases. Embedded, inextricably intertwined is the phrase that's used in the cases, and pendent appellate jurisdiction. And they say, and they ubiquitously say, if you get an order granting arbitration, that's it. You cannot appeal it. It's just one of those appeals you cannot take. What's your best case you're going to rely on for that proposition? Well, I'll rely on several. No, I want your best case. I think Bushley's the best case. It uses those three phrases. But I would suggest Bushley, Dease, and Sanford, all three of them, ubiquitously say the same thing. But they all use that language, and they all hear the argument, isn't it intertwined with? Isn't it inextricably connected with? But the fact of the matter, one could make an inextricably connection argument on almost any case, on a remand case, where if there's no subject matter jurisdiction, there is no appeal. Now, the question you asked last June in the oral argument, Your Honor, was the half-loaf question. You may or may not remember the exact way you phrased it. I don't remember it. He said the advantage of the transcript, I think. Oh, no, I've read the transcript. So I can't cheat. If you haven't, I have. And I've got the two questions down, Pat. I won't read them to you. But you asked that exact same question. And my partner, Mr. Parris, who's the first team, I'm the second team, but he had a commitment that it was longstanding from months ago. The answer is there is just no pendant appellate jurisdiction. Now, the question that you were troubled with before was how far can a bankruptcy court judge go in modifying an agreement? Because here there was some modification, no question. I had the unfortunate experience of handling the Crown case. And in Crown, if you'll recall, Judge Newsom, the bankruptcy judge just across the bay, said, I don't care what your contract says. You can have an exclusive jurisdiction in Delaware, but you're going to bring this case here. And he said, I am going to modify that contract. I think I have the power to do that under Section 105 of the Bankruptcy Code. He did. That came to this court. And this court said, the bankruptcy court has the power to modify that contract. A modification very close to the modification we're talking about here. Now, when you think about what... The location and so forth. I'm sorry. The logistics, the location and so forth. The location, the timing. And what happened here, and you need to understand the facts, we had a November 05 trial date. $1.6 million had been paid in post-petition premiums. The jurisdiction of the bankruptcy court had been invoked since 1898. All of the motions, and we had a courtroom full of all the lawyers against us in that case, wouldn't get in this room. Judge Rosenblatt, the district court, and our other litigation set a 6-12 month trial date in November. Within a few days of that trial date being set, they hauled us off on the 22nd of March, 05, into Bermuda, and got an ex parte anti-suit against us, saying, we want you to do it here and now. Now, we went back to Judge Case, as you can well imagine. We didn't have... we're not a huge law firm. I mean, we were dealing with giants. The judge understood it. Our client is a very, very well respected bankruptcy lawyer and practitioner, and was the trustee in this case. And we said, we can't do both. They did modify it. And the judge was troubled with the violation of the Barton Doctrine. And he entered sanctions on the violation of the Barton Doctrine, as he should. Nobody should be granting an anti-suit type proceeding ex parte in Bermuda without getting approval of the bankruptcy court. That's the injunction. What did the judge do? I'm going to tell you, he said to Ace, under what terms my bankruptcy trustee is going to go to arbitration. He took into consideration a number of factors. That's not reviewable. That's what Crown teaches us. Does it matter, though, that we have the overlay of the Federal Arbitration Act? It seems to me that the bankruptcy court does have the general power to modify the terms of executory contracts. They do it all the time, for example, with regard to labor agreements in bankruptcies of companies. But does it make a difference when we're talking about an arbitration agreement? No, it doesn't. If you take a look at the Augustia case, the Second Circuit 97 decision, they modified it's not going to be in London, it's going to be in New York. In the Bushley case, it's not going to be NASD litigation. It's going to be another type of litigation, not arbitration. It's going to be EDR arbitration. There's a division in the circuits on that, isn't there? I can't find a division where someone says you cannot modify. I do not have a case. I'm sorry? Modify an arbitration. I cannot find a case where it says you cannot make modifications to an arbitration agreement by a bankruptcy court. Now, I may be wrong somewhere, but we've had a pretty diligent look at that question. And I do not think there is a split in the circuits on that. I think the rule, just as it is in the Ninth Circuit from Crown, is that a bankruptcy judge has exactly that power under Section 105 of the Bankruptcy Code. And I think that's an appropriate thing for a judge to do. So the power of the bankruptcy court is broader than the power of a district court? Assume that this case had been brought as a diversity action in district court on just the straight breach of contract theory. Would your position still be the same, that the district court has the inherent authority to modify the terms of the contract if it doesn't like the location  Well, that's a great question, and I think the answer is yes. But I'm glad I don't have those facts. What I have, the bankruptcy court sitting in the court of first instance with the power of the Bankruptcy Code and the duty to protect his trustee and the duty to protect the assets of the estate, he had a duty, not just the power, but he had a duty to say, we're not going to take this little trial team we've got and run it off in two directions. And that's what he really did. We're also not going to put you in a jurisdiction where you can go ex parte, get an anti-suit injunction against a bankruptcy trustee. He had plenty of sound basis to do that. But my argument goes back to the core again one more time. There is no basis to review an order that grants arbitration. That's taught to us in Greenlee. And that's true. These questions seem somewhat related in my mind. The ordinary order granting arbitration just says go forth and arbitrate according to the terms of your contract. And here it's kind of a hybrid order in the sense that it orders arbitration, but with some alteration in what otherwise would be the terms, location, and so forth. Is it still unreviewable even though the order does a little bit more than simply order arbitration? It is not reviewable. That's no different than Augustia, IDS Life, the cases we've cited, Dease and Sanford. All of them made some minor modifications or in some cases even more than minor modifications. How would you distinguish mints of the Third Circuit? Judge Roth's opinion, mints of the Third Circuit? I'm unable to do that as I stand before you in my mind. I apologize. I have read the case, but I won't be able to give you a correct answer on that. Do you wish to save a little time? I do. I wish to save three minutes, and that's exactly what I've got left. Thank you very much. Good morning, Your Honors. Lee Godfrey on behalf of ACE. Your Honor, you do have jurisdiction to hear this matter. There has been, there was no order by the district court simply saying go arbitrate. The district court changed the terms of the arbitration. Your Honor, it is, and the Quackenbooth case is right on point. Assuming that we do have jurisdiction, as Judge Thomas' earlier question to opposing counsel noted, ordinarily in bankruptcy, the bankruptcy court has the power to alter terms of contracts, executory contracts, in ways that would not be the case in an ordinary action on the contract in district court. Why isn't that power to oversee the assets of the bankrupt state sufficient to allow the small modifications that were made here that were money savers, really? Your Honor, the law is, and the authorities are, that the arbitration clause in the policy has to be enforced as written. This is a non-core issue. This is not a core issue. Arbitration, as the court knows, is a creature of agreement. Well, so are all the other things that are changed by bankruptcy courts' creatures of agreement. I mean, labor agreements, the example that Judge Talman gave, they are clearly creatures of heavy negotiation and contract. And yet, in bankruptcy, the court has unusual powers. But it doesn't have the power, Your Honor, to require Ace to participate in a proceeding that is different from the contract that it negotiated. Well, in a labor agreement, arbitration is frequently the mechanism by which the dispute is resolved. Well, Your Honor, the fact remains, the law remains, that you cannot proceed against Ace when it has not consented to the terms upon which you're going to go forward. That's the law, period, pure and simple. I mean, the bankruptcy court can order enforcement of the agreement as made, but it cannot undo and require Ace to participate in an arbitration. We have an in-bank opinion, the name of which escapes me, which basically invalidated the entire arbitration clause in an agreement because we found it to be unconscionable in the case of a consumer violation. So if we can strike the clause entirely out of the contract, I hear your argument. Your argument is this is the heart of the contract. This is really important to Ace. We want a Bermuda arbitration. Absolutely, Your Honor. And it's not a matter of simply where is it going to be, in Toronto or is it going to be in Hamilton. It goes to the application of the law upon which the proceeding will go forward. We bargained for, we negotiated for Bermuda law. That goes to not only how the arbitrators are picked, but many other issues that are certainly more important than just location of where the thing might take place. Are there any, I'm pretty sure there are no Ninth Circuit cases, but are there any circuit cases that hold specifically that a bankruptcy court lacks any power to alter any term of an arbitration portion of an executory contract? Your Honor, there are cases that certainly stand for the proposition that with respect to non-core matters, the bankruptcy court cannot undo those. For example, Judge Posner's case, the Pumding case, where he discusses the issue of core versus non-core and how that affects what kind of order the bankruptcy court can enter. I didn't specifically answer my question. Are you aware of any case that specifically holds that a bankruptcy court is without power to alter any term of an arbitration agreement? Again, in a bankruptcy context, arbitration agreement specifically. No, Your Honor. As I stand here, no. But all of the jurisprudence that we've seen in this case stands for the proposition, I believe, that this creature of agreement cannot be modified without the consent of the parties who have agreed to the arbitration. You can't do it over their objection. It's a denial of due process, in effect, to put ACE into a private dispute resolution proceeding when, in fact, it has negotiated for something quite different. It cannot be required to proceed under a contract that deprives it of basic due process and that it doesn't have to go and do an arbitration under terms different from what it negotiated. Are you familiar with the Mintz case of the Third Circuit that I asked? I was trying to. I was thinking as hard as I could, Your Honor, and I don't remember the case. Well, Mintz says it doesn't matter whether it's core or non-core. It's just it's a principle that they're trying to establish. And I know a big part of your argument is whether or not it's non-core or core. And we went through that a year ago. And I managed to get sufficiently confused. I had to go find out what the case was in that regard. And now I think it may have, at least under Mintz, may have been a waste of time. What difference does it make whether it's core or non-core? Aren't we just talking about a principle here of whether arbitration or the bankruptcy law is going to prevail? But the bankruptcy court's jurisdiction, Your Honor, the bankruptcy court, what it has the power to do is And what it doesn't have the power to do is it cannot, with respect to non-core proceedings, assert the same kind of power that it has with respect to core proceedings in bankruptcy. Judge Roth, writing for the Third Circuit, said it's core or non-core. It doesn't matter. The principle is, according to the Third Circuit, is that you're going to protect the arbitration unless there's some very limited worries where the bankruptcy work will prevail. I thought that case was pretty strong in your position. But you still believe that we have to decide whether it's core or non-core before we can decide this case? Yes, sir. Okay. Mr. Godfrey, if we disagree with your premise and conclude that this is a core proceeding, and if I look at the bankruptcy code, as I read it, the district court has the discretion to grant an interlocutory review of a bankruptcy court order, that would give the district court jurisdiction to review the decisions of the bankruptcy court, would it not? I think so, Your Honor. Okay. And I think you do have jurisdiction to do what you're doing here this morning. I think, among many other things, that's another thing that the district court got right in his opinion. There is pendent appellate jurisdiction to review the arbitration order under binding Ninth Circuit authority. He was right that the key determination is whether the underlying insurance coverage case is a core proceeding or not. He was right that the insurance coverage case is a plain vanilla contract claim, does not involve bankruptcy laws or procedures, and is therefore non-core. He was right that the arbitration agreements governing non-core claims have to be enforced in bankruptcy. He was right that the Kashani factors, we didn't hear much about that, also must be focused on the insurance coverage dispute. That's what they go to. Because that's the case that will ultimately be resolved either under the bankruptcy court's jurisdiction or elsewhere. He was right that the Kashani factors don't support the bankruptcy court's assertion of continuing jurisdiction over the insurance case. I'm with you up to the point that the Bermuda court enjoins the trustee from pursuing actions against ACE in U.S. proceedings, in the bankruptcy proceedings. That's what causes me the most difficulty. Because that does seem to turn your non-core position argument on its head. Now we are trying to interfere with the trustee's obligations to the bankruptcy court to marshal the assets of the bankrupt estate. Well, your honor, it may well be that there's a debate that can be had, but the fact of the matter is there is no Barton issue left in this case. There isn't. We have complied with Barton. We dismissed the Bermuda claim, for example. We went and sought leave from the bankruptcy court to proceed according to the terms of the contract in Bermuda. We've done everything that there is to do under the Barton set of issues in this case. You're overlooking two things. You're overlooking the fact that your clients were warned by the trustee very early in March of 2005 that if they proceeded to arbitration in Bermuda, they would breach the Barton doctrine. And you're ignoring the fact that on August the 20th of 2005, when the bankruptcy court issued its order enjoining Ace from proceeding further, two days later it was in the Bermuda Supreme Court seeking to take action against the trustee. Why don't those two actions by your client and your client's lawyers and other agents constitute breaches of the Barton doctrine for which sanctions were appropriate? It may well be, your honor. That's a separate question, the issue of sanctions. But whatever the facts are with respect to that point, there is nothing about what happened in Bermuda and when it happened that might give rise to a Barton request for sanctions. There's nothing about any of that that goes to the issue that's before the court. That proceeding down there and what happened down there did not do anything to change the power of the bankruptcy court in the United States to make Ace participate in a bankruptcy under terms that it did not negotiate. As we've set forth in our papers, lots of issues that go to why we negotiated the insurance policy contract that we did, the choice of the arbitrator and all the rest. The court's seen that in the papers. That's the issue. The issue is not whether or not Ace's conduct in Bermuda at the time frame the court mentioned was tortious or was such to give rise to that we can take the most egregious description. It still doesn't do anything to confer some separate or different power on the bankruptcy court. The bankruptcy court refused, although there's an argument made that he granted our motion, that he granted Ace's motion with respect to proceeding to bankruptcy. Well, of course, he didn't. He did not grant the bankruptcy relief as written, which was crucial. So the whole history with respect to what happened that gave rise to the sanctions is separate and apart from the issue that the court has to decide, which is whether or not Ace is going to be, against its desires, put into a different bankruptcy, excuse me, a different arbitration procedure than it agreed to. Counsel spoke a moment and I believe the judge had a question about jurisdiction. I don't think there's any question that under Quackenbush this court has got jurisdiction given the intertwining of the injunction and the bankruptcy order to hear this appeal. And for goodness sakes, the last thing anybody should want is for this to get arbitrated twice. We're nine years old already. For us to have to proceed under a bankruptcy, under an arbitration that we did not agree to, holds the risk that we'll have to do this yet again. I think that if the court, I believe, can and will reach the same conclusions that the district court reached in connection with the order that's on appeal. And the relief he granted, one, reverse order compelling arbitration in the U.S., an order that arbitration occur in Bermuda as provided by the agreement, vacate the injunction against the Bermuda proceeding, reverse the sanctions against Bailey and his firm, uphold the sanctions against Ace. That's the relief that we're seeking here, the same relief that we got in the district court. I think the district court got it right in all material ways. You do have jurisdiction. The core non-core is the key issue. This is non-core. We should be, the bankruptcy court does not have the power to do what it tried to do. So we'll ask that the orders of the district court be affirmed. Thank you. You're not raising, then, the issue of the sanctions against Ace here in our court? I think that the sanctions against Ace, Your Honor, were not well founded. I think all Ace did was. I misunderstood. You said you were going to ask for a straight affirmance of the district court. That's the only issue with which we take issue, Your Honor. So it's not a straight affirm across the board. When there's one turn in the road. It's affirmed with a footnote. Yes, sir. Thank you, counsel. Thank you, Your Honor. Let me suggest where we don't want to go in the Ninth Circuit or in any circuit. If you decide you have jurisdiction to review an order granting arbitration, you need to carefully think about the consequences and compare it to Section 16 in the Federal Arbitration Act and the litany of cases I've cited. What happens? We're now sitting here in this courtroom in March of 2009. We settled the case and were available to go to arbitration in October of 2005. Virtually everyone who wants to avoid arbitration will seek an appeal. The purpose of the Arbitration Act and the purpose of arbitration itself, and it's manifest in the cases, to have a speedy and non-appealable adjudication. When you sit down with your client and say, do you want an arbitration provision in your contract? They say, well, tell me the advantages, plus and minus. Well, the first advantage is you get it over with quick, and it's private, and it doesn't take four years, and it doesn't take you having appeals. Let me ask you this. Let's assume, for the sake of my question, that an order to arbitrate changes a material term in a bizarre way. Let's say the parties have agreed to arbitrate in San Francisco, and they're both located here, and it's really convenient, and for some reason the court says, no, you have to go do this in Vermont. The parties, what is their recourse, if any, in that circumstance? Do they have to go through the arbitration and then get a court to look at it afterwards, or what's the process, if any, that they can follow? You described it exactly right. When there is a final order, it is then appealable. When the arbitration order becomes a judgment of the court, then it's appealable, under the limited rules under which one can appeal an arbitration award. Now, aren't we lucky that we don't have crazy bankruptcy judges or crazy district judges who will often go off and do those kinds of things? I mean, Judge Wallace, last June, asked my partner really tough questions. How far can somebody go? What if you're doing it in Mongolia, and you're having a horse race to decide it? The question I would pose is when an order of arbitration really isn't anymore an order of arbitration. You might have a very good question. But right now, the state of the law, and for very good reason, don't waste three, four years trying to figure out the details. A judge orders arbitration. You get arbitration. Section 16 of the Federal Arbitration Act says no appeal. Cases, ubiquitous cases, and I went through my file, and I don't have the Mensa case, and I've got to go read it now. You've driven me crazy. Was it cited in our briefs? You read it, and you can let me know someday. I will be happy to do that. But it is important that we not create law in this or any other circuit that makes every modification or every order of arbitration, if some clever lawyer can figure out a way, to put a two- or three-year delay in it. So your response to Mr. Godfrey's point is yes, you may have to go through an arbitration in New York or Phoenix, but you're just going to have to wait until the arbitration is complete, and then when we try to confirm the arbitration award, you can bring your challenge to the chamber. And they may win, so they may never need to do that. Bingo. Then it doesn't make any difference, does it? And if they lose, is that a material cause of a loss? I mean, that's almost impossible. I mean, I've only been involved in a few appeals where you've had an arbitration order entered, and I've been practicing law almost 40 years. Nobody takes those on, and nobody's going to be able to argue, hey, New York somehow prejudiced you from some other location. That is going to also save the court an enormous amount of time. We spent a lot of time, energy, effort, and money of this estate going through this entire process. Because Judge Case was probably unhappy, I don't know what he was thinking about, but every judge in the United States has to be very unhappy when an ex parte anti-suit can be obtained in another jurisdiction. Thank you, counsel. Thank you, my time is up. Oh, I'm over. We appreciate very much your arguments and, in fact, re-arguments. They've been extremely helpful, and the case just argued is now submitted. Thank you. Thank you.
judges: Wallace, Graber, Tallman, Cjj